UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**KYONG HO AHN,**
on her own behalf and on behalf of others
similarly situated,

                    Plaintiff(s),

          – against –                                    Civil Action No. 20-cv-09198-KMK

**MB RYE METRO NAIL, INC.**
          **d/b/a Rye Metro Nails,** and
**SUN YOUNG KIM**
          **a/k/a CINDY KIM,**

                    Defendants.

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANTS' MOTION TO COMPEL BILATERAL ARBITRATION**

                              BLACKSTONE LAW GROUP LLP
                              1201 Broadway
                              Suite 904A
                              New York, New York 10001
                              (212) 779-3070

                              *Attorneys for Defendants*
                              *MB Rye Metro Nail, Inc. and*
                              *Sun Young Kim*

March 3, 2021

Defendants respectfully submit this reply memorandum of law in further support of Defendants' motion to compel a bilateral arbitration of Plaintiff's claims.

### PRELIMINARY STATEMENT

Plaintiff's opposition brief argues (i) because the U.S. Supreme Court has not specifically ruled on the question of whether the arbitrability of class claims is a "gateway issue" for the court not an arbitrator to decide, and the Second Circuit Court of Appeals merely "presumed" it was a gateway issue, that this Court is free to do whatever it likes and (ii) that the Employee Arbitration Agreement at issue in this case "clearly and unmistakably" evidences that the parties agreed to let an arbitrator decide the class claim issue because (a) the agreement refers to arbitration of "any dispute," (b) the agreement refers only to arbitration before the AAA and that this Court should ignore the "other Arbitral Services" reference because it is "meaningless," and (c) that Defendants consented to arbitration before the AAA in its pre-motion correspondence.

Plaintiff's arguments are wrong and wrongheaded.

*First,* just because the U.S. Supreme Court and the Second Circuit Court of Appeals have not specifically ruled that arbitrability of class claims is a gateway issue does not mean that there is no jurisprudential guidance for this Court to follow in deciding the question.  Indeed, Plaintiff does not dispute that every Circuit that has decided this question has found the issue to be one for the courts to decide and none have found otherwise.

*Second,* Plaintiff ignores the entire line of decisions from the Supreme Court in the past 25 years regarding the proper interpretation of arbitration agreements and the clear hostility of that Court to allowing class claims in arbitration absent the clearest and most direct evidence that such was the intent of the parties to the contract.  Instead, Plaintiff relies on several cases decided before the Supreme Court's recent decision in *Lamps Plus* and whose holdings are now of questionable continuing validity.

*Third,* although it may not be crystal clear what the parties intended by the inclusion of the phrase "other Arbitral Service within 10 miles from -----------------", that issue is irrelevant on this motion because neither party is seeking to enforce that provision here.  What is clear from the inclusion of the phrase in the Employee Arbitration Agreement – and absolutely relevant on this motion – is that the parties made plain that they intended that the AAA *not* be the exclusive arbitral tribunal for an arbitration, and that fact distinguishes this case from the precedents cited by Plaintiff.

*Fourth,* although it is true that Defendants consent to an arbitration before the AAA and, indeed, may prefer it to any alternative tribunal, nowhere have they ever claimed that it is the exclusive arbitral tribunal available in this matter.  Plaintiff's claim is just silly.

*Finally,* Plaintiff's argument that the parties agreed to allow class claims in arbitration (for the same reasons that they supposedly agreed to let the arbitrator decide the question) fails to address the other arguments raised by Defendants on this motion.  For example, Plaintiff says nothing in response to Defendants' argument that the text of the Employee Arbitration Agreement speaks very clearly of arbitration of disputes in the singular.  That is, disputes between one plaintiff and one defendant, and that courts in this District have found such language persuasive evidence that the parties did not intend to arbitrate class claims.  Plaintiff also ignores completely the due process problems inherent in allowing class claims in arbitration, which courts in this District have found an important factor in denying arbitration of class claims.  Lastly, Plaintiff is silent regarding the fundamental structural problem of their class claim in that the purported class they seek to represent numbers only seven persons.  The Court may consider this undisputed fact in determining that there is insufficient evidence that the parties ever contemplated, let alone consented to, class claims in their arbitration agreement.

**ARGUMENT**

**A.**  **The Question of Arbitrability of Class Claims is for the Court to Decide**

Plaintiff's opposition brief does not respond to Defendants' argument that every Circuit that has decided the question of whether the arbitrability of class claims is a gateway issue has found that the issue is one for the court, not an arbitrator, to decide.  *See Shivkov v. Artex Risk Sols., Inc.,* 974 F.3d 1051, 1065–67 (9th Cir. 2020); *20/20 Commc'ns, Inc. v. Crawford*, 930 F.3d 715, 718–19 (5th Cir. 2019); *Herrington v. Waterstone Mortg. Corp.*, 907 F.3d 502, 506–07 (7th Cir. 2018); *JPay, Inc. v. Kobel*, 904 F.3d 923, 935–36 (11th Cir. 2018); *Catamaran Corp. v. Towncrest Pharmacy*, 864 F.3d 966, 972 (8th Cir. 2017); *Del Webb Cmtys., Inc. v. Carlson*, 817 F.3d 867, 873 (4th Cir. 2016); *Opalinski v. Robert Half Int'l Inc.*, 761 F.3d 326, 334–35 (3d Cir. 2014); *Reed Elsevier, Inc. v. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 598–99 (6th Cir. 2013).  The reasoning of the Courts in these decisions is comprehensive, persuasive, and unchallenged by Plaintiff.

Moreover, although the Supreme Court has not yet addressed the issue directly, that does not mean that there is no indication how the Supreme Court would decide this issue.  As the Court of Appeals for the Sixth Circuit stated in *Reed Elsevier, Inc.*, the Supreme Court "has given every indication, short of an outright holding, that classwide arbitration is a gateway question rather than a subsidiary one."  734 F.3d at 598–99.

Plaintiff instead claims that "the Second Circuit simply declined to reach the issue" in *Wells Fargo Advisors, LLC v. Sappington,* 884 F.3d 392, 395 (2d Cir. 2018).  Plaintiff, however, makes extensive use of brackets to mangle the actual language of the Court's decision to make it appear that the Court's reasoning is in line with Plaintiff's and, in the process, renders their point nearly incomprehensible.  (*See* Opp, Br. at 1).

The actual language of the *Sappington* decision is clear, unambiguous, and needs no attorney edits to make its meaning plain:

> We assume without deciding that the question whether an arbitration clause authorizes class arbitration is a so-called "question of arbitrability" presumptively for a court, rather than an arbitrator, to decide.

*Id.* at 394.  Further in its discussion of the ruling, the Court states:

> We review de novo the District Court's conclusion that an arbitrator, rather than a court, should determine whether the Tucker and Sappington clauses authorize class arbitration.  In doing so, we are guided by the presumption that questions of arbitrability – certain gateway matters, such as "whether the parties are bound by a given arbitration clause" or "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy" – are for a court to decide.  As already noted, we assume without deciding that one of these gateway matters is whether an arbitration clause authorizes class arbitration.

*Id.* at 395 (internal citations omitted).  Neither of these quotes from the *Sappington* decision lend support to Plaintiff's argument.  Indeed, they support Defendants' point that courts, including this Circuit, universally accept that arbitrability of class claims is a gateway issue for the court, not an arbitrator, to decide.

## B. There is No "Clear and Unmistakable" Evidence that the Parties Agreed to Allow an Arbitrator to Decide the Arbitrability of Class Claims

Plaintiff does not dispute that it is its burden on this motion to show that there exists "clear and unmistakable" evidence that the parties have nevertheless agreed to let an arbitrator determine the arbitrability of class claims.  *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995).  Plaintiff claims to meet this burden by pointing out that the Employee Arbitration Agreement in this case states that "any dispute or claim . . ." shall be resolved by arbitration, and that this language is the same as that found in the arbitration agreements at issue in the *Sappington* case.  (Opp. Br. at 2).

Notably, Plaintiff fails to point out that the Court found the construction of the arbitration language in *Sappington* persuasive **under Missouri law**, which the Court pointed out does not require that "[a]n arbitration agreement . . . recite verbatim that the 'parties agree to arbitrate arbitrability' in order to manifest 'clear and unmistakable' agreement." *See Sappington,* 884 F.3d at 396 (citing Missouri state court precedent).  The Employee Arbitration Agreement in this case, however, is governed by New York law, not Missouri law.  Also, the Court in *Sappington* did not address the issue of whether Missouri state law was inconsistent with the objectives of the Federal Arbitration Act or "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of the FAA." *Lamps Plus, Inc. v. Varela,* 139 S.Ct. 1407, 1415 (2019) (citing *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 348, 352, 131 S.Ct. 1740 (2011)).  After *Lamps Plus,* courts must apply state law regarding the interpretation of contracts consistent with the FAA, which the Supreme Court ruled preempts state law in the arbitration context. *Id.* at 1415   Moreover, *Sappington* was decided before the Supreme Court's ruling in *Lamps Plus*, so it is doubtful that the Second Circuit's interpretation of the arbitration language in that case is still reliable precedent.

Plaintiff also claims that the AAA is the only arbitral tribunal referenced in the Employee Arbitration Agreement and that this construction has been found in the Second Circuit to be evidence of the parties' consent to defer the arbitrability issue to an arbitrator.[1]  However, as Defendants pointed out in their opening brief, courts have found this to be persuasive evidence only where the arbitration agreement provides for exclusive arbitration before the AAA, which has adopted Supplementary Rules allowing class claims.  To make this argument work, Plaintiff

---

[1]  Defendants do not acknowledge – but do not dispute – that there is currently a Circuit split on this issue.  (*See* Def. Br. at 6.)

needs to excise the provision of the Employee Arbitration Agreement that makes it clear that the AAA is not the exclusive tribunal available to the parties to submit their disputes.  Plaintiff does this by claiming that the "other Arbitral Service" language is "meaningless."

Plaintiff's argument misses the point.  The exercise that the Court is engaged in here is to look at the language of the parties' agreement to determine if there exists "clear and unmistakable" evidence that the parties intended to use the AAA as their exclusive arbitral forum.  That evidence cannot be found in the text of the agreement.  The agreement clearly shows that the parties intended that the AAA was only one of a number of tribunals available to the parties to bring their disputes.  The fact that it is not crystal clear which other tribunals are available does not eviscerate the point that the ***intent of the parties in their writing*** was to make multiple arbitral tribunals available to the parties.  And that evidence puts the facts of this case outside of the decisions finding reference to the AAA as the exclusive tribunal persuasive.[2]

Finally, Plaintiff argues that Defendants consented to arbitration before the AAA in their pre-motion correspondence as evidence of the parties' exclusive intent under the Employee Arbitration Agreement.  This argument is silly.  Of course Defendants consent to arbitration before the AAA; that outcome is specifically provided for in the agreement.  In addition, Defendants may prefer arbitration before the AAA over "other Arbitral Services" for any number

---

[2]    Defendants do not concede that the "within 10 miles of ‑‑‑‑‑‑‑" language in the Employee Arbitration Agreement is a reference to or modifier of the "other Arbitral Service" provision. Defendants maintain that the "within 10 miles" language is meant to define the place of the arbitration (a common arbitration provision) and not act as a limitation on what additional arbitral tribunals are available to the parties, although we concede that the syntax is awkward. Under New York rules of contract interpretation, the Court should look to interpret the language of an agreement so as to give meaning to all its provisions, not write language out as "meaningless," as urged by Plaintiff, and to construe contracts in total so as to give effect to the clear intent of the parties. *See Rhoda v. Rhoda*, 175 A.D.3d 1572, 1573 (2d Dep't 2019) (citing *Muzak Corp. v. Hotel Taft Corp.*, 1 N.Y.2d 42, 46, 133 N.E.2d 688, 690 (N.Y. 1956)).

of reasons and it would not be unusual for Defendants' counsel to try to steer the Court and/or Plaintiff in that direction in its correspondence.  Defendants did not, however, concede that the AAA was the exclusive arbitral forum available to the parties.  It should be noted that Plaintiff's first correspondence claimed that the arbitration agreement was invalid and unenforceable.

**C.**     **The Parties Agreed Only to Individual Arbitration, Not Class Arbitration**

Although Plaintiff concedes that class arbitration is a matter of consent, it makes no new arguments in support of why the arbitration agreement here allows class claims.  (Opp Br. at 4.) Plaintiff does not address any of Defendants' arguments why the arbitration agreement only allows bilateral arbitrations, including (i) that the language in the agreement references only individual arbitrations, (ii) the serious due process issues raised by class arbitrations, and (iii) Plaintiff's "numerosity" problem, which is further evidence (in addition to Defendant's own sworn Declaration) that the parties never contemplated or agreed to arbitrate class claims.

As we argued in our moving papers, the text of the Employee Arbitration Agreement states that the parties agree to arbitrate any dispute "that arises out of or that relates to his/her employment agreement, or that relates to the breach of this agreement . . . or a dispute between the parties . . ."  These words strongly indicate that the parties contemplated only bilateral arbitrations between the employee and the employer.  No reference is made in the Employee Arbitration Agreement to any other employee or any other claims that may be asserted by more than the single parties to the Agreement.  Thus, by its very terms, the Employee Arbitration Agreement is limited to claims related to Plaintiff's own employment, and not to claims related to other employees' experiences with Defendants.  *See Bandler v. Charter One Bank,* 2010 WL 3617115, at *5 (Vt. Super. Aug. 02, 2010) (when an arbitration agreement uses singular terms, the only reasonable interpretation is that it did not intend to cover class claims).

- 7 -

Class arbitration also raises due process concerns.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 808 (1985).  A class arbitration requires "[a]t least" as much process as a corresponding class action, particularly because the FAA's limitations on judicial review "make[] it more likely that errors will go uncorrected." *Concepcion*, 563 U.S. at 349–50. Moreover, class arbitration raises constitutional problems for courts in enforcing an award binding absent class members without ensuring that those individuals agreed to "submit[] themselves to this arbitrator's authority."  *Oxford Health v. Sutter*, 569 U.S. 564, 574 (2013) (Alito, J., concurring).

There also exists a question of whether Plaintiff's claims could satisfy the numerosity requirement for class actions.  Plaintiff does not dispute Defendants' statement that there are only seven members in the purported class, which would make a class action impracticable.  For the Court's purposes, this undisputed fact is further evidence that the parties could not have anticipated, let alone agreed, that their arbitration agreement would allow for class claims.

### CONCLUSION

For all the reasons stated above, Defendants respectfully request that this Court issue an Order compelling Plaintiff to arbitrate her claims in a bilateral arbitration.

Dated: New York, New York
      March 3, 2021

                                **BLACKSTONE LAW GROUP LLP**

                                John D. Lovi (john@blackstone-law.com)
                                Justin B. Perri (justin@blackstone-law.com)
                                1201 Broadway, 9th Floor
                                New York, New York 10001
                                Telephone/ Facsimile: (212) 779-3070
                                *Attorneys for Defendants*
                                *MB Rye Metro Nail, Inc. and*
                                *Sun Young Kim*