UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KYONG HO AHN,

Plaintiff,

v.

MB RYE METRO NAIL, INC., *and* SUN
YOUNG KIM,

Defendants.

No. 20-CV-9198 (KMK)

OPINION & ORDER

Appearances:

Aaron B. Schweitzer, Esq.
John Troy, Esq.
Troy Law, PLLC
Flushing, NY
*Counsel for Plaintiff*

Justin B. Perri, Esq.
Blackstone Law Group LLP
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Plaintiff Kyong Ho Ahn ("Ahn" or "Plaintiff") brings this Action against her former employer, MB Rye Metro Nail, Inc. ("MBR") and the owner of MBR, Sun Young Kim ("Kim"; collectively, "Defendants"), pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq*., and the New York Labor Law ("NYLL"), § 190 et seq. (*See generally* Compl. (Dkt. No. 1).) Before the Court are two motions: (1) Plaintiff's Motion for Confirmation of an Arbitral Award, (*see* Not. of Mot. ("Pl's Not. of Mot.") (Dkt. No. 41)), and (2) Defendants' cross-motion to Modify the Arbitral Award, (*see* Not. of Mot. ("Defs' Not. of Mot.") (Dkt. No. 45)). For the following reasons, Plaintiff's Motion is granted, and Defendants' Motion is denied.

I.  Background

A.  Factual Background

The Court incorporates the recitation of the facts as outlined in the arbitration award decision (the "Award") by Arbitrator Andrew J. Peck ("Arbitrator Peck" or the "Arbitrator") on July 11, 2022.  (*See* Decl. of Aaron Schweitzer in Supp. of Mot. ("Schweitzer Decl.") Ex. A ("Decision") (Dkt. No. 42-1).)  As relevant to the instant Action, Arbitrator Peck found that Plaintiff was entitled to $1,921.25 in overtime and $1,921.25 in liquidated damages.  (*Id*. at 7.) In addition, Arbitrator Peck stated the following regarding statutory notice violations:

> [I]t is undisputed that respondents did not provide Ahn with the statutory notice upon hiring, or the statutory information along with her weekly wage payments. Ahn is entitled to payment of $5,000 for respondents'[] failure to give her the statutory notice upon hiring, and another $5,000 for failure to provide her notice with her weekly wage statements.  Respondents have argued, relying on cases from Judge Chen, that Ahn lacks standing to recover under those statutes.  The weight of the caselaw in the SDNY and EDNY is to the contrary.

(*Id*. at 8 (citations omitted).)  Finally, Arbitrator Peck awarded Plaintiff's counsel $11,250 in attorneys' fees, "greatly reduc[ing]" Plaintiff's requested $46,000 in fees to exclude attorneys' fees spent on federal court litigation, as well as excessive fees related to an attorney who recently graduated law school.  (*Id*. at 1, 8–9.)

B.  Procedural History

Plaintiff filed her initial Complaint on November 3, 2020.  (*See* Compl.)  On December 11, 2020, Defendants filed a pre-motion letter in anticipation of a motion to compel individual arbitration.  (*See* Dkt. No. 12.)  Plaintiff responded on December 16, 2020, requesting that the Court refer the matter to the American Arbitration Association for class arbitration, rather than individual arbitration.  (*See* Dkt. No. 13.)  At the request of the Court, (*see* Dkt. No. 14), Defendants responded to Plaintiff's letter on December 22, 2020, (*see* Dkt. No. 15).  On January

11, 2021, the Court held a pre-motion conference and set a briefing schedule for Defendants'

motion.  (*See* Dkt. (minute entry for Jan. 11, 2021); Dkt. No. 18.)

On February 1, 2021, Defendants filed their Motion to Compel Arbitration.  (*See* Not. of

Mot. (Dkt. No. 19); Defs' Mem. of Law in Supp. of Mot. (Dkt. No. 19-1); Decl. of Justin B.

Perri in Supp. of Mot. (Dkt. No. 20).)  Plaintiff filed her Opposition on February 22, 2021.

(Mem. of Law in Opp. to Mot. (Dkt. No. 21).)  Defendants filed their Reply on March 3, 2021.

(Defs' Reply Mem. of Law in Supp. of Mot. (Dkt. No. 22).)  The Court held oral argument on

July 26, 2021, where the Court referred the matter to arbitration but denied Defendants' motion

for individual arbitration, leaving the issue of individual versus class arbitration to the arbitrator.

(*See* Dkt. (minute entry for July 26, 2021); Dkt. No. 27.)

The Parties proceeded to arbitration shortly thereafter, and provided status updates to the

Court to indicate that the Arbitrator issued a final decision on July 11, 2022.  (*See* Dkt. Nos. 29,

31).  On September 19, 2022, Plaintiff filed a pre-motion letter in anticipation of moving to

confirm the arbitral award.  (*See* Dkt. No. 32.)  After receiving Defendants' responses on

October 12 and 17, 2022, (*see* Dkt. No. 35, 37), the Court set a briefing schedule in lieu of a pre-

motion conference, (*see* Dkt. No. 40).

On November 28, 2022, Plaintiff filed the instant Motion.  (Pl's Not. of Mot.; Mem. of

Law in Supp. of Mot. ("Pl's Mem.") (Dkt. No. 43); Schweitzer Decl.)  On December 27, 2022,

Defendants filed their instant Cross-Motion.  (Defs' Not. of Mot.; Mem. of Law in Supp. of Mot.

("Defs' Mem.") (Dkt. No. 46); Decl. of John D. Lovi in Supp. of Mot. ("Lovi Decl.") (Dkt. No.

47).)  On January 23, 2023, Plaintiff filed her Reply.  (Reply Mem. in Supp. of Mot & Opp. of

Defs' Mot. ("Pl's Reply") (Dkt. No. 48).)  On February 1, 2023, Defendants filed their Reply.

(Reply Mem. in Opp. to Pl's Mot. & Supp. of Mot. ("Defs' Reply") (Dkt. No. 49).)

## II.  Discussion

### A.  Standard of Review

"Section 301 of the [LMRA], 29 U.S.C. § 185 (1994), provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards." *Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998).  Federal court review of arbitral awards is "severely limited so as not to frustrate the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *United Bhd. of Carpenters & Joiners of Am. v. Tappan Zee Constructors, LLC*, 804 F.3d 270, 274–75 (2d Cir. 2015) (quotation marks and citation omitted).  "The federal policy in favor of enforcing arbitration awards is particularly strong with respect to arbitration of labor disputes." *N.Y. Hotel & Motel Trades Council v. Hotel St. George*, 988 F. Supp. 770, 774 (S.D.N.Y. 1997) (citation omitted).  Because the LMRA "embodies a 'clear preference for the private resolution of labor disputes,'" *National Football League Management Council v. National Football League Players Association*, 820 F.3d 527, 536 (2d Cir. 2016) (quoting *Int'l Bhd. of Elec. Workers v. Niagara Mohawk Power Corp.*, 143 F.3d 704, 714 (2d Cir. 1998)), judicial review of arbitral awards in this context is "among the most deferential in the law," *id*. at 532.

Confirmation of an arbitration award is thus generally "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court[.]"  *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (quotation marks and citation omitted).  The Court's task is not to reconsider the merits of the dispute; after all, the Parties bargained for the arbitrator's determination of the merits.  *Nat'l Football League Mgmt. Council*, 820 F.3d at 536.  Instead, the Court's role is "simply to ensure that the arbitrator was 'even arguably construing or applying the contract and acting within the scope of his authority' and did not

'ignore the plain language of the contract.'"  *Id*. at 537 (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)); *see also Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) ("It is only when the arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice' that his decision may be unenforceable." (quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960))).  "The arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case.  Only a barely colorable justification for the outcome reached by the arbitrators is necessary to confirm the award." *D.H. Blair & Co.*, 462 F.3d at 110 (quotation marks and citations omitted).

Given this deference and limited review, an arbitral award will normally be vacated "only upon finding a violation of one of the four statutory bases [enumerated in the FAA], or, more rarely, if [the court] find[s] [an arbitrator] has acted in manifest disregard of the law." *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 139 (2d Cir. 2007).  The FAA allows for vacatur: "(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrator[], or either of them; (3) where the arbitrator[] [was] guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrator[] exceeded [his] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a).

"To vacate an award on the basis of a manifest disregard of the law, the court must find 'something beyond and different from mere error in the law or failure on the part of the

arbitrators to understand or apply the law.'" *Jock v. Sterling Jewelers, Inc.*, 646 F.3d 113, 121 n.1 (2d Cir. 2011) (quoting *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 208 (2d Cir. 2002)).  An arbitral award may be vacated for manifest disregard only where a petitioner can demonstrate "both that (1) the arbitrator[] knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrator[] was well-defined, explicit, and clearly applicable to the case." *Porzig*, 497 F. 3d at 139 (quoting *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004)); *see also STMicroelectronics, N.V. v. Credit Suisse Securities (USA) LLC*, 648 F.3d 68, 78 (2d Cir. 2011) ("We therefore will not vacate an award because of 'a simple error in law or a failure by the arbitrators to understand or apply it' but only when a party clearly demonstrates 'that the panel intentionally defied the law.'" (quoting *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003))).

B.  Analysis

Plaintiff argues that the Award should be confirmed because it complies with the FAA. (*See generally* Pl's Mem.)  Defendants argue that (1) the Court should modify the Award because the Arbitrator improperly awarded damages based upon statutory violations pursuant to New York Labor Laws, (*see* Defs' Mem. 6–8), and (2) the attorneys' fees awarded should be reduced commensurate with a reduction in the statutory fines, (*see id*. at 8–9).

At the outset, the Court agrees with Plaintiff that Defendants' request for modification of the Award is improper.  (*See* Pl's Reply 1–3.)  Section 11 of the FAA allows a district court with proper venue to modify or correct an award if "there was an evident material mistake in the description of any person, thing, or property referred to in the award."  9 U.S.C. § 11(a); *see also Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193, 195 (2000) (holding venue is proper for §§ 9–11 under FAA or under general venue statute).  A district court may also modify

6

the award "to effect the intent thereof and promote justice between the parties" if "the award is imperfect in matter of form not affecting the merits of the controversy."  9 U.S.C. § 11(c). Importantly, "modification cannot be made for substantive dispute[s] that lay[ ] at the heart of the arbitration," but is instead used "to correct typographical, clerical, and other obvious errors." *Webb v. Citigroup Glob. Mkts., Inc.*, No. 19-CV-535, 2019 WL 4081893, at *5 (S.D.N.Y. Aug. 29, 2019) (citation omitted) (alterations in original).  Here, Defendants request two substantive "modifications" to the Award, which would result in reducing Plaintiff's award from $13,842 to $3,842, and from Plaintiff's counsel's award of $11,250 to $3,200.  (*See* Defs' Mem. 9.) Defendants' requests clearly "implicate [the] substantive dispute" at issue in this litigation, and it would be improper for this Court to address these issues through Section 11.  *Webb*, 2019 WL 4081893, at *10.

In Reply, Defendants ask this Court to "simply opine on the correct state of the law to be applied and send the matter back to Arbitrator Peck to reconsider whether he would revise his award in any way."  (Defs' Reply at 2.)  To support their argument, Defendants cite two district court cases decided in 1990 and 1998.  (*Id*.)  However, Defendants are mistaken for two clear reasons.  First, neither case Defendants cite stands for their asserted proposition.  Instead, each opinion does exactly what Plaintiff states Defendants are trying to avoid: analyze whether an award is subject to vacatur under the stringent standard established in the Second Circuit.  *See Clarendon Nat. Ins. Co. v. TIG Reinsurance Co.*, 990 F. Supp. 304, 311 (S.D.N.Y. 1998) (remanding awards to the arbitrator for further clarification as to the elements of the award after determining that "the arbitrators exceeded their authority" and portions of the damage award "should be vacated"); *Collins & Aikman Floor Coverings Corp. v. Froehlich*, 736 F. Supp. 480, 484 (S.D.N.Y. 1990) (vacating an award where an arbitrator "exceeded her authority" as set in

7

the arbitration agreement).  Second, as a general rule, federal courts do not "simply opine" on the correct state of the law without jurisdiction or statutory grant to review the same, as this would create an impermissible advisory opinion.  *See, e.g.*, *United Public Workers of American (C.I.O.) v. Mitchell*, 330 U.S. 75, 89 (1947) ("As is well known[,] the federal courts established pursuant to Article III of the Constitution do not render advisory opinions.").  Accordingly, the Court declines Defendants' invitation and instead looks to the FAA and relevant case law to determine the Court's role in reviewing Arbitrator Peck's award.

Despite being put on notice that modification of the award likely was not available, Defendants failed to clarify exactly what theory upon which they wished this Court to vacate the Award.  Upon reviewing Defendants' briefing, the Court charitably identifies two potential theories within this Court's jurisdiction: (1) whether the Arbitrator acted in manifest disregard of the law, and (2) whether the Arbitrator exceeded his powers.  The Court will address each in turn.

### 1.  Manifest Disregard of the Law

Defendants ostensibly argue that the Arbitrator ignored "the clear record that the law had changed" as to Plaintiff's recoverability of statutory claims under the NYLL, exhibiting a manifest disregard for the law.  (Defs' Mem. 6.)  Based on the decisions Defendants identified to the Arbitrator, Defendants argue that "Arbitrator Peck clearly misapprehended that [the relevant decisions] . . . were not 'outlier decisions' but rather reflected the new precedent in this Circuit." (*Id*. at 8.)  Defendants conclude that, because Arbitrator Peck "made it clear that he wanted to ground his award in the proper decisional authority, it is right and proper for this Court to use its review powers to modify the arbitral award to reflect the correct law, or to remand the case back

to Arbitrator Peck with instructions regarding the correct legal precedent to follow in this case."
(*Id.*)

An arbitral award may be vacated for manifest disregard only where a petitioner can
demonstrate "both that (1) the arbitrators knew of a governing legal principle yet refused to
apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well-defined,
explicit, and clearly applicable to the case." *Porzig*, 497 F. 3d at 139 (quoting *Wallace v. Buttar*,
378 F.3d 182, 189 (2d Cir. 2004)). Defendants appear to be challenging both factors at issue,
noting that the Arbitrator "specifically requested . . . briefing" from both Parties regarding
recoverability of NYLL statutory damages and simply "disregarded" the caselaw. (*See* Defs'
Mem. 6.)

Here, it is clear that the Arbitrator knew of Defendants' view of the governing legal
principles. Indeed, after post-arbitration hearing briefing, Arbitrator Peck emailed the Parties
commenting on the Parties' opening briefs, stating that Defendants' brief "was cursory on
authority for not imposing wage statement penalties." (Lovi Decl. Ex. E at 1 (Dkt. No. 47-5).)
On June 23, 2022, Defendants filed a supplemental brief largely outlining the same arguments
currently before this Court. (*See* Lovi Decl. Ex. C, at 7–8 (Dkt. No. 47-3).) On June 27, 2022,
Arbitrator Peck asked the Plaintiff to file additional briefing "regarding whether the *Chen* and
*Netburn* decisions re notice requirements are outlier decisions or the current majority rule."
(Lovi Decl. Ex. F, at 1 (Dkt. No. 47-6).) No Party provides this Court with Plaintiff's response,
though this is immaterial to the question at hand.

However, as to the rest of the first factor, Defendants fail to show that the Arbitrator
"refused to apply" or "ignored" the law. Indeed, Arbitrator Peck specifically stated in his Award
that "[Defendants] have argued, relying on cases from Judge Chen, that Ahn lacks standing to

9

recover under those statutes.  The weight of the caselaw in the SDNY and EDNY is to the

contrary."  (Decision at 8.)  As such, Arbitrator Peck did not refuse to apply or ignore governing

case law.  He reviewed Defendants' arguments and simply disagreed.  And, to the extent that

Defendants are unsatisfied with Arbitrator Peck's explanation, while "the failure [of an]

arbitrator[] to explain an award can be taken into account" when determining if an arbitrator

manifestly disregarded the law, courts have stated repeatedly that "arbitrators have no

obligation" to explain their award.  *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 204 (2d Cir.

1998) (collecting cases).

     Moreover, and as relevant to both factors, the law Defendants continue to cite is far from

"a governing legal principle" that is "clearly applicable to th[is] case."  *Porzig*, 497 F. 3d at 139.

Defendants focus on a line of cases decided in the wake of *TransUnion LLC v. Ramirez*, 141

S. Ct. 2190 (2021) which address a plaintiff's ability to establish an injury-in-fact for purely

statutory claims.  Defendants primarily cite a decision by U.S. District Judge Pamela K. Chen

which found that the plaintiffs lacked standing to bring their NYLL claims for failure to provide

notice and wage statements.  *See Sevilla v. House of Salads One LLC*, No. 20-CV-6072, 2022

WL 954740, at *7 (E.D.N.Y. Mar. 30, 2022).  Defendants argue that this case and others

changed the governing law, by holding that "federal courts no longer have jurisdiction to hear

NYLL wage statement and notice claims."  (Defs' Mem. 6–8.)  However, these cases clearly do

not stand for the maximalist proposition proposed by Defendants.  Instead, *Sevilla* and similar

cases stand for the proposition that *if* a plaintiff wants to bring federal claims based on notice and

wage statements, that plaintiff must assert more than a "[t]echnical statutory violation," tying the

statutory violation "to either a tangible injury or something akin to a traditional cause of action."

*Sevilla*, 2022 WL 954740, at *7 (quoting *TransUnion*, 141 S. Ct. at 2205); *see also Wang v.*

*XBB, Inc.*, No. 18-CV-7341, 2022 WL 912592, at *13 (E.D.N.Y. Mar. 29, 2022) (holding that a

plaintiff lacked standing because he "has not linked any injury-in-fact to [the] [d]efendants'

failure to provide statutory notices under the NYLL"); *Francisco v. NY Tex Care, Inc.*, No. 19-

CV-1649, 2022 WL 900603, at *7 (E.D.N.Y. Mar. 28, 2022) ("While [plaintiff's allegations]

may be technical violations of the NYLL, neither [the] [p]laintiff nor the record demonstrate how

those technical violations led to either a tangible injury or something akin to a traditional cause

of action, and the Supreme Court has made clear that a statutory violation alone, without a

tangible injury or close parallel to a traditional cause of action, does not constitute an injury that

can be recognized by the federal courts.").[1]

Accordingly, it is not clear that the issue Defendants raise is applicable to this case. As

Plaintiff points out, (*see* Pl's Reply 4–5), *TransUnion* and its progeny discuss Article III standing

for plaintiffs suing in federal court. These Parties, by virtue of their agreement, were in

arbitration, not federal court. This Court is not empowered to consider questions of standing as it

relates to arbitrability, because the only two things "district courts must consider [are] (1)

whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the

dispute at issue comes within the scope of the arbitration agreement." *Samake v. Thunder Lube*

---

[1] As outlined by Plaintiffs, several courts have reviewed New York Labor Law claims since Defendants' assertion of the supposed changed laws. *See, e.g.*, *Metcalf v. TransPerfect Translations Int'l, Inc.*, No. 19-CV-10104, 2022 WL 19300779, at *5 (S.D.N.Y. Nov. 15, 2022) (finding standing where plaintiffs had "added specific allegations that the inaccurate wage notices and wage statements resulted in them or the putative [c]lass [m]embers being underpaid for nearly nine months," and commenting that "the allegations are more robust than those in the Eastern District of New York cases which asserted technical violations and did not specifically tie harm to the WTPA notices"); *Mateer v. Peloton Interactive, Inc.*, No. 22-CV-740, 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022) (analyzing an EDNY case and noting that "allegations in the FAC [for this case] go beyond asserting a bare statutory violation and sufficiently allege a concrete harm"). This too indicates that Defendants' argument that the law has "changed" is incorrect.

*Inc.*, No. 19-CV-1094, 2020 WL 11039197, at *2 (E.D.N.Y. Dec. 22, 2020) (quotation marks

omitted) (quoting *Shetiwy v. Midland Credit Mgmt.*, 959 F. Supp. 2d 469, 473 (S.D.N.Y. 2013)).

Accordingly, the Arbitrator did not display manifest disregard of the law, and the Court denies

vacatur on this ground.

### 2. Exceeding Arbitration Power

Given that the Defendants appear to be raising a "standing" related question, the more

relevant inquiry is whether Arbitrator Peck exceeded his arbitral powers.  Under Section 10(a)(4)

of the FAA, an arbitral decision may be vacated where the "arbitrators exceeded their powers, or

so imperfectly executed them that a mutual, final, and definite award upon the subject matter

submitted was not made."  9 U.S.C. § 10(a)(4).  The Second Circuit has "'consistently accorded

the narrowest of readings' to [S]ection 10(a)(4) permitting vacatur where the arbitrator has

exceeded [his] powers."  *Jock*, 646 F.3d at 122 (collecting cases); *see also Beijing Shougang*

*Mining Inv. Co., Ltd. v. Mongolia*, 11 F.4th 144, 161 (2d Cir. 2021) (same).  "This is 'especially'

true when [S]ection 10(a)(4) is invoked to challenge an award deciding 'a question which all

concede to have been properly submitted in the first instance.'"  *Jock*, 646 F.3d at 122 (quoting

*DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 824 (2d Cir. 1997)).  Instead, the focus of

the inquiry is "whether the arbitrators had the power, based on the parties' submissions or the

arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that

issue."  *Id*.  "Put simply, 'Section 10(a)(4) does not permit vacatur for legal errors.'"  *Id*.

(quoting *Westerbeke*, 304 F.3d at 220).  If the "arbitrator's award draws its essence from the

agreement to arbitrate," then "the scope of the court's review of the award itself is limited."

*ReliaStar Life Ins. Co. of N.Y. v. EMC Nat. Life Co.*, 564 F.3d 81, 86 (2d Cir. 2009) (quotation

marks and alterations omitted).  Courts will "uphold an award so long as the arbitrator 'offers a

barely colorable justification for the outcome reached.'" *Jock*, 646 F.3d at 122 (quoting

*ReliaStar*, 564 F.3d at 86).  "Accordingly, an arbitrator may exceed her authority by, first,

considering issues beyond those the parties have submitted for her consideration, or, second,

reaching issues clearly prohibited by law or by the terms of the parties' agreement." *Id*.  "The

question [of] whether the parties have submitted a particular dispute to arbitration, i.e., the

question of arbitrability, is an issue for judicial determination unless the parties clearly and

unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83

(2002) (quotation marks, emphasis, and alteration omitted).

    Here, as discussed above, the Parties clearly submitted this dispute to Arbitrator Peck—

Defendants first cursorily raised this in their post arbitration brief, (*see* Lovi Decl. Ex. B, at 2),

and the Parties extensively discussed the issue of statutory wage and hour violations in

supplemental briefing, (*see, e.g.*, Lovi Decl. Ex. C, at 7–8).  In addition, Arbitrator Peck did not

"reach[]issues clearly prohibited by law or by the terms of the parties' agreement." *Jock*, 646

F.3d at 122.  As discussed, NYLL statutory violations are not clearly prohibited by any law, and

the terms of the Parties' arbitration agreement allow for "[a]ny dispute or claim that arises out of

or that relates to his/her employment . . . or . . . is based upon the employment relationship

(including any wage claim, . . . or any claim based upon any statute, regulation, or law . . .)."

(Defs' Mot. to Compel Arbitration Ex. C, at 1 (Dkt. No. 19-3).)

    Under this Court's exceedingly narrow review, and given that the Arbitrator indeed had

the power to reach this issue, the Court denies Defendants' motion for vacatur.

### 3.  Confirmation of Arbitration Award

    In light of Court's determination that there is no basis to vacate the arbitration award, the

Court grants Plaintiff's Motion to confirm the Award, and denies Defendants' cross-motion to

modify the award.  *See Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007) ("Confirmation . . . is

a summary proceeding . . . , which is not intended to involve complex factual determinations,

other than a determination of the limited statutory conditions for confirmation or grounds for

refusal to conform . . . . At the confirmation stage, the court is not required to consider the

subsequent question of compliance."); *D.H. Blair & Co.*, 462 F.3d at 110 ("The arbitrator's

rationale for an award need not be explained, and the award should be confirmed if a ground for

the arbitrator's decision can be inferred from the facts of the case.  Only a barely colorable

justification for the outcome reached by the arbitrators is necessary to confirm the award."

(citation and quotation marks omitted)).  Similarly, the Court denies Defendants' Motion to

reduce the award of attorneys' fees, as the motion was premised upon the Court finding vacatur

appropriate.  (*See* Defs' Mem. 8–9.)

## III.  Conclusion

For the reasons set forth herein, the Court grants Plaintiff's Motion to confirm the arbitral

award and denies Defendants' cross-motion to modify the award.  The Clerk of the Court is

respectfully requested to terminate the pending Motions, (Dkt. Nos. 41, 45), enter judgment for

Plaintiff, and close the case.

SO ORDERED.

DATED:      September 20, 2023
            White Plains, New York

_____
                KENNETH M. KARAS
                United States District Judge